IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY and ALLIANZ GLOBAL RISKS US INSURANCE COMPANY<br>Plaintiffs,<br><br>v.<br><br>CARNEGIE TOWER DEVELOPMENT COMPANY, O'NEILL PROPERTIES GROUP, L.P. and J. BRIAN O'NEILL<br>Defendants. | :<br>:<br>:  Civil Action No.:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## COMPLAINT

Plaintiffs Liberty Mutual Insurance Company and Allianz Global Risks US Insurance Company, by their attorneys, Chartwell Law Offices, LLP, and Zelle Hofmann Voelbel & Mason, LLP, respectively, hereby bring this Complaint for Declaratory Judgment pursuant to 28 U.S.C. §2201 et seq, and for other relief against the defendants Carnegie Tower Development Company, O'Neill Properties Group, L.P. and J. Brian O'Neill, and in support thereof aver as follows:

### PARTIES AND JURISDICTION

1.  Plaintiff Liberty Mutual Insurance Company ("Liberty") is an insurer organized and existing under the laws of the Commonwealth of Massachusetts, with its principal place of business in Boston, Massachusetts.

2.  Plaintiff Allianz Global Risks US Insurance Company ("Allianz") is an insurer organized and existing under the laws of the State of California with its principal place of business in Burbank, California. Liberty and Allianz are collectively referred to herein as the "Insurers."

3. On information and belief, Defendant Carnegie Tower Development Company ("Carnegie") is corporation organized and existing under the laws of the State of Delaware with its principal place of business in King of Prussia, Pennsylvania.

4. On information and belief, Defendant O'Neill Properties group, L.P. ("OPG"), is a limited partnership organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business in King of Prussia, Pennsylvania. On information and belief, the limited partners of OPG are Defendant Brian O'Neill and Brymere Estate Planning and Construction, Inc., a corporation organized and existing under the laws of the State of Delaware with its principal place of business in King of Prussia, Pennsylvania.

5. On information and belief, Defendant J. Brian O'Neill ("O'Neill"), an individual, is a citizen of the Commonwealth of Pennsylvania. Carnegie, OPG and O'Neill are collectively referred to herein as the "Insureds."

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332 in that there is complete diversity of citizenship between the Plaintiffs and the Defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. Venue is proper in the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. §1391 (a)(1) and (2) in that the Defendants OPG and O'Neill reside within this judicial district, defendant Carnegie is a closely held corporation with majority ownership held by O'Neill, a citizen of the Commonwealth of Pennsylvania, and significant events giving rise to this suit occurred in this judicial district.

## FACTUAL BACKGROUND

8. The Insureds, acting through their insurance brokers, Carey, Richmond & Viking Insurance ("CRV"), the retail broker, and Risk Placement Services, Inc. ("RPS"), retained by CRV to serve as the wholesale broker, sought builder risk insurance coverage from Liberty and Allianz (referred to collectively as the "Insurers") for a construction project being undertaken by the Insureds in Portsmouth, Rhode Island, known as the Carnegie Towers project.

9. During the negotiations for the builders risk coverage, RPS advised the Insurers in writing that the Insureds were seeking $25 million in "soft costs" coverage (also referred to as delay costs coverage), and specified that the $25 million in such coverage was to be further broken down according to the following specific coverages and sub-limits:

|  | Revised Soft Costs | Rounded Soft Costs |
|---|---|---|
| Legal Fees | 475,000 | 500,000 |
| Development Fees | 3,312,000 | 3,500,000 |
| Financing Fees | 2,512,500 | 3,000,000 |
| Interest Reserves – Senior Debt | 1,387,038 | 1,500,000 |
| Interest Reserves – Mezzanine Interest | 11,677,270 | 12,000,000 |
| Permits | 452,500 | 500,000 |
| Marketing | 3,911,058 | 4,000,000 |
| Total | 23,727,366 | 25,000,000 |

The Insureds did not request Loss of Gross Earnings coverage.

10. Consistent with this request, RPS then prepared and provided to the Insurers a document that it characterized as a "Quote" (referred to herein as a "Request for Proposal") specifying the amounts and types of delay costs coverage being sought by the Insured, as follows:

| | |
|---|---|
| $    500,000 | Legal Fees |
| $ 3,500,000 | Development Fees |
| $ 3,000,000 | Financing Fees |
| $ 1,500,000 | Interest Reserves – Senior Debt |
| $12,000,000 | Interest Reserves – Mezzanine Interest |
| $    500,000 | Permits |
| $ 4,000,000 | Marketing |

The Request for Proposal did not request coverage for loss of Gross Earnings. A true and correct copy of the "Request for Proposal" is attached as **Exhibit 1**.

11. The aggregate sub-limits for the delay cost coverages sought by the Insureds, as specified in the Request for Proposal, total $25,000,000, which is consistent with RPS's request on behalf of the Insureds as described in Paragraph 9, above.

12. As a result of the negotiations between Liberty and RPS/CRV, Liberty issued to the Insureds a builder's risk policy, No. 4N518867001, with limits of $51,440,400, representing its 50% share of the total program limits of $102,880,800. The total program limits are based on the Insureds' representation that the project development cost, or contract work, is $77,880,000, plus $25,000,000 in total delay cost coverage, for a Total Contract Value equal to the total program limits. Coverage under the Liberty policy was effective for a 24 month term commencing on December 29, 2006, the inception date of the policy, and terminating no later than December 29, 2008, which

is the date originally specified in the Liberty Policy as the Anticipated Date of Completion for purposes of the delay costs coverage.

13. As a result of the negotiations between Allianz and RPS/CRV, Allianz issued to the Insureds a builder's risk policy, No. ATO 300797, with limits of $51,440,400, representing its 50% share of the total program limits of $102,880,800. The total program limits are based on the Insureds' representation that the project development cost, or contract work, is $75,000,000, plus $25,000,000 in total delay cost coverage, for a Total Contract Value equal to the total program limits. Coverage under the Allianz policy was effective for a 24 month term, commencing on December 29, 2006, which is the date originally specified in the Allianz Policy as the Anticipated Date of Completion for purposes of the delay costs coverage.

14. On or about November 30, 2007, the Insureds, through their brokers, advised the Insurers that the revised construction schedule for the Carnegie Tower project indicated that the project was not anticipated to be completed until March 3, 2009, and requested that the Liberty and Allianz policies be extended to the revised anticipated completion date, March 3, 2009.

15. Based upon the Insureds' request to extend the coverage, Liberty issued to Defendants Endorsement No. 5, which became a part of the Liberty policy and which was intended to reflect Liberty's agreement to extend the policy to March 3, 2009 in accordance with Defendants' representations concerning the revised anticipated completion date. A true and correct copy of Liberty Endorsement No. 5 is attached as **Exhibit 2**.

16. Based upon the Insureds' request to extend the coverage, Allianz issued to Defendants Endorsement No. 11 to its policy, and which was intended to reflect Allianz's agreement to extend the policy to March 3, 2009 in accordance with Defendants' representations concerning the revised anticipated completion date. A true and correct copy of Allianz Endorsement No. 11 is attached as **Exhibit 3**.

17. On or about December 1, 2008, the Insureds sustained property damage at the Carnegie Tower Project as the result of a discharge of water from piping on the fourth floor of the premises (the "Water Discharge event").

18. The Insureds notified the Insurers of the Water Discharge event, and the Insurers promptly commenced an investigation and evaluation of the losses arising from the Water Discharge event.

19. The Insureds submitted to the Insurers a demand for payment of benefits under Section II of the Liberty and Allianz policies for the costs of investigating, responding to, remediating, and repairing the physical damage resulting from the Water Discharge event (the "PD Claim").

20. On or about April 1, 2009, the Insurers agreed to pay and the Insureds agreed to accept $6,853,644 (Liberty and Allianz each paying 50%) in full and final settlement of the PD Claim.

21. In exchange for payment of the settlement amount referenced in the preceding paragraph, Insurers were released of all obligations owed to the Insureds under Section II of the Liberty and Allianz policies.

22. In addition to the PD Claim, the Insureds have claimed coverage under the Delay in Start-Up Endorsement ("DSU Endorsement") included within both the Liberty

and Allianz policies. The Insureds have based their claim for coverage under the DSU Endorsement on a "period of indemnity" which the Insureds claim begins on or about December 1, 2008.

23. As reflected in the Allianz endorsement extending the policy to March 3, 2009, which the Insureds accepted as issued without reservation or exception, as of the date of the Water Discharge event, the Anticipated Date of Completion under the coverage provided by the DSU Endorsement in the Allianz and Liberty policies was intended by both the Insurers and the Insureds to be March 3, 2009. The coverage provided under the Delay In-Start Up Endorsement is also subject to a 30 day waiting period, or deductible. Thus, the Insureds cannot claim coverage under the Liberty and Allianz policies for costs incurred as a result of a delay in completing the project as a result of the Water Discharge Event unless such costs are incurred on or after April 3, 2009.

24. Consistent with the coverage sought by the Insured, the Liberty and Allianz policies include coverage for Soft Costs, and provide an itemization of the available coverages and applicable sub-limits in the DSU Endorsements of the policies:

| $ 500,000    | Legal/Accounting Fees    |
| $ 3,500,000  | Architect/Engineer Fees  |
| $ 16,500,000 | Interim Interest Expense |
| $ 500,000    | Permits                  |
| $ 4,000,000  | Advertising Expense      |

25. The Insureds claim for coverage under the DSU Endorsement includes alleged losses which do not fall within the specific coverages that were sought by the Insureds as set forth in Paragraph 9, above, and provided by the Insurers in the DSU

7

Endorsement. The items claimed by the Insureds which are not within the coverage of the DSU Endorsement include, but are not limited, to:

A. Gross Earnings losses;

B. Interest expense on loans other than loans to finance the contract work;

C. Public adjuster fees

D. Legal expense associated with the Insureds' claims for coverage;

E. Monetary and other concessions to potential purchasers of condominium units;

F. Developer Cost Reimbursement;

G. Master Condominium Costs and Building Operations Costs;

H. Taxes and Insurance Premiums;

I. Overhead Expenses

26. The Insurers promptly advised the Insureds of the grounds for the Insurers' disagreement with the Insureds' DSU claim, and have reserved their rights and defenses to the claim under their respective policies and at law.

27. The disagreement between Insurers and Defendants has ripened into a justiciable controversy.

## COUNT I
### Declaratory Judgment

28. The allegations of paragraphs 1 through 27 above are incorporated by reference as though set forth fully herein.

29. The coverage available to the Insureds under the DSU Endorsement applies only to delay costs which fall within the specific coverages identified in the DSU Endorsements as set forth in paragraph 24, above, and only to the extent that such costs are incurred on or after April 3, 2009.

WHEREFORE, plaintiffs Liberty Mutual Insurance Company and Allianz Global Risks US Insurance Company request a declaration from this honorable Court that:

(a) the Insurers' are not obligated to pay Defendants' claim for Gross Earnings losses as well as any other losses which are not included within the specific coverages identified in Paragraph 24, above;

(b) the DSU coverage available to Defendants under the DSU Endorsements is subject to a thirty (30) day deductible period which begins to run on March 3, 2009;

(c) In evaluating Defendants' claim for Soft Costs under the DSU Endorsements, the Insurers are entitled to a credit for the period of time that Defendants failed to exercise due diligence and dispatch in effecting repairs at the Carnegie Tower project.

## COUNT II
### Reformation

30. The allegations of paragraphs 1 through 29 are incorporated by reference as though set forth fully herein.

31. It was the parties' intent and agreement that the coverage provided by the DSU Endorsement be limited to those specific coverages and amounts identified in Paragraph 24, and that, to be eligible for reimbursement, costs that fall within those coverages must be incurred on or after April 3, 2009.

32. To the extent that the Allianz and Liberty policies and endorsements, standing alone, are found to not accurately reflect the complete agreement of the parties, their failure to do so is the result of a scrivener's or clerical error or mutual mistake of the parties and are thus subject to reformation.

WHEREFORE, plaintiffs Liberty Mutual Insurance Company and Allianz Global Risks US Insurance Company request that, in the alternative, their policies, including the DSU Endorsements annexed to each, be reformed to reflect the following, as appropriate:

(a) The DSU Endorsements afford aggregate limits of $25,000,000 for DSU Coverage;

(b) the coverages specifically scheduled in the DSU Endorsements are subject to the corresponding sub-limits noted thereon;

(c) the coverages specifically scheduled in the DSU Endorsements of the Liberty and Allianz policies are the only delay costs coverages available to the Insureds, and there is no coverage available under the DSU endorsement for:

    (i) Gross Earnings losses;

    (ii) Interest expense on loans other than loans to finance the contract work;

    (iii) Public adjuster fees;

    (iv) Legal expense associated with the Insureds' claims for coverage;

    (v) Monetary and other concessions to potential purchasers of condominium units;

    (vi) Developer Cost Reimbursement;

    (vii) Master Condominium Costs and Building Operations Costs;

    (viii) Taxes and Insurance Premiums;

    (ix) Overhead Expenses.

(d) the Liberty endorsement extending the builder's risk policy until March 3, 2009 also amends the Anticipated Date of Completion in the Liberty DSU Endorsement to March 3, 2009.

THE CHARTWELL LAW OFFICES, LLP

By: _____
Christopher L. Troy
Attorney ID #57365
Jonathan R. MacBride
Attorney ID #77177
Bell Atlantic Tower
1717 Arch Street, 46th Floor
Philadelphia, Pennsylvania 19103

Attorneys for Plaintiffs
Liberty Mutual Insurance Company and Allianz Global Risk US Insurance Company


Counsel:
ZELLE HOFMANN VOELBEL & MASON LLP
Karl S. Vasiloff
Massachusetts Board of Bar Overseers #555638
950 Winter Street, Suite 1300
Waltham, Massachusetts  02451

Attorneys for Plaintiff
Allianz Global Risk US Insurance Company